[No. 26750. Department One. December 20, 1937.]

*In the Matter of the Estate of* EMLY VANDERBECK SWAN, *Deceased.*

IDA MATZ, *Appellant,* v. LOUIS J. MUSCEK *et al., Respondents.*[1]

*C. D. Cunningham* and *Leo A. McGavick,* for appellant.

*H. J. Gielens,* for respondent Santos.

*Louis J. Muscek, pro se.*

[1] Reported in 74 P. (2d) 207.

MAIN, J.—This is a will contest.

Emly Vanderbeck Swan died testate December 5, 1935. The will, in due course, was admitted to probate. Subsequently, Ida Matz, a sister of the testatrix, petitioned the court to set aside the will on the ground that the testatrix lacked mental capacity to make it and was acting under undue influence. The allegations of the petition were denied by the executor and the principal beneficiary. The cause was tried to the court without a jury and resulted in findings of fact from which the court concluded that the testatrix was competent to make the will at the time it was executed and that she was not acting under duress or undue influence. From the judgment entered dismissing the petition, the petitioner appealed.

As stated in the appellant's brief, the assignments of error "go to the sufficiency and the weight of the evidence." For a number of years, the testatrix operated an apartment house in the city of Tacoma and resided in one of the apartments. Sometime during the latter part of the year 1929, or early in the year 1930, one Frank Santos began rooming and boarding with the testatrix and continued to room and board with her during the remainder of her life, which was approximately five years.

June 17, 1930, the deceased made a will in which Santos was named as the principal beneficiary, and in that will was this statement:

"It is my will and desire that my niece Ida Zaharis or any other relative who shall survive me have and receive no part of my estate."

The will which is involved in this case was executed June 28, 1935, while the testatrix was in the hospital and three days after she had undergone a serious operation for an ailment which subsequently caused her death.

Upon the question of capacity, little need be said, because the subscribing witnesses, the attending physician, and the draftsman of the will all testified to her mental capacity, and there are other facts and circumstances which indicated that the testatrix knew at the time what she was doing.

The principal contention is that the testatrix, at the time the will was executed, was acting under duress impelled by fear that, if she did not leave her property to Santos, he would do violence to her or to some of her relatives. The appellant called a number of witnesses who testified to statements that the testatrix had made to them during her lifetime and after Santos had come to board and room in the apartment with her, to the effect that she was afraid of him; that she could not get him to leave the apartment; that she was going to make a will leaving all of her property to her favorite niece, Ida Zaharis, she having no children of her own; that Santos would get nothing by her will; that she had an affection for her relatives; and that she and Santos frequently quarreled. In opposition to the charge of undue influence by putting in fear, testimony was offered to the effect that Santos had been kind to her; that she desired to leave her property to him; and that she had no intention of leaving anything to her relatives.

Without passing upon the weight of the respective lines of testimony, the question ultimately is whether there was evidence sufficient to show that Santos had put the testatrix so in fear of him that, at the time she executed the will, she was controlled by that fear, and that she did not act of her own volition.

There seems to be no disagreement as to the principles of law to be applied in this case, which may be stated as follows: (a) The burden was upon the contestant to show duress or undue influence; (b) that

such duress or undue influence may be shown or inferred from the facts and circumstances as presented by the evidence; and (c) that the overt acts of undue influence need not have been exercised at the exact time of the making of the will.

The testatrix, as the evidence shows, was a strong-minded woman, at least until after the operation, mentioned above, was performed. At the time the first will was made, which was more favorable to Santos than the second, there is no evidence bearing upon the relation of the parties other than that Santos roomed and boarded with the testatrix, and at the time was paying for his board and working in the smelter. The last will contained certain bequests for some of her relatives. From the fact that the parties quarreled, it cannot be inferred that the will was executed under undue influence produced by fear, because it would not be unusual, under like circumstances, that the parties should at times disagree. Had the testatrix really desired at any time to cause Santos to leave the apartment, she could have required or compelled him to do so. So far as this record shows, she had ample opportunity to revoke the first will, and some months intervened between the making of the second and her death, when the second will could have been revoked had she so desired. The evidence offered by the appellant was not sufficient to shift the burden of proof to the respondents.

This case is very different in its facts from that of *In re Tresidder's Estate*, 70 Wash. 15, 125 Pac. 1034.

We are in accord with the view of the trial court to the effect that the evidence was not sufficient to justify the setting aside of the will.

The judgment will be affirmed.

STEINERT, C. J., BLAKE, HOLCOMB, and SIMPSON, JJ., concur.